# Pippin *v.* Clarke County.

### [87 South. 283, No. 21612.]

1. ANIMALS. *Owner dipping cattle in inspector's absence not entitled under statute to resulting damages.*

    Where a county was operating under the laws for tick eradication and fixed particular days for owners of cattle to dip them in vats constructed by the county, at which an inspector in the

employment of the county was present to supervise the dipping, and a cattle owner failed to carry his cattle on said day, but at the direction of the inspector carried them to the vat on the following Monday and dipped them himself, the inspector not being present, he cannot recover for damage or injury to cattle resulting from the dipping under his own supervision, under chapter 38, Laws, Extra Session of Mississippi of 1917.

2. ANIMALS.  *Statute not intended to allow damages for owner's negligence in dipping cattle.*

The intention of the Legislature in enacting chapter 38, Laws of Extra Session of 1917, is to allow owners of cattle damaged by the negligence of the agents of the county damages for such negligence, and it is not intended to allow owners of cattle damage for their own negligence.  To obtain damages under this act the claimant must bring his case within the terms of the act.

APPEAL from circuit court of Clarke county.

HON. R. W. HEIDELBERG, Judge.

Suit by J. F. Pippin against Clarke County. Judgment for the defendant on a peremptory instruction, and plaintiff appeals.  Affirmed.

*J. L. Adams* and *S. H. Tinol,* for appellant.

The only question in this case is whether the cattle were dipped under the supervision of the dipping inspector. The regular day for dipping cattle at De Soto, where the cattle in question were dipped, was on Saturday.  Owing to the fact that the appellant was unable to get up his cattle on the range and dip them on Saturday the dipping inspector authorized him to dip his cattle on the succeeding Monday.  The cattle were duly dipped on Monday and one of them drank a portion of the arsenical solution and died therefrom.  The evidence clearly shows that the cow was cut open and that the solution was found inside of her.  Previous to the dipping the cow was in good health. The court below gave a peremptory instruction for the defendant on the theory that as the inspector was not pres-

ent on the day that the cow was dipped that she was not therefore dipped under the supervision of the board of supervisors. The evidence clearly shows that the dipping inspector was acting under authority of the board of supervisors in dipping cattle and further shows that he ordered or permitted Mr. Pippin to dip his cattle two days after the regular dipping day. We think that it was clearly a question for the jury to decide whether the cattle were dipped under the supervision of the dipping inspector or not and was not a case for the court to decide as a matter of law. The word supervise does not simply mean that the inspector must be present every time the cattle are dipped and the law does not require the inspector to dip on specified days but twice a month. Our contention is that the dipping inspector could authorize Mr. Pippin to dip his cattle two days after the regular dipping day and as the evidence shows that the appellant did dip his cattle in accordance with his agreement with the inspector and as the cattle drank the solution without any fault on the part of the appellant and that the jury and not the court should say whether the appellant is entitled to any damages. We are clearly of the opinion that the court placed too narrow a construction upon the word "supervision."

So thinking we submit that the case should be reversed and remanded.

*J. W. Heidelberg,* for appellee.

Our contention is that even if it had been shown that the claim of the plaintiff had been rejected or disallowed by the board of supervisors, which was not shown, and even if it had been proved that the drinking of the vat solution had produced the death of the cow, and no sufficient evidence was introduced to prove this, that the county would not be liable to the plaintiff for the death of the animal, for the reason that she was not dipped under the supervision of the State Live Stock Sanitary Board, nor

of the board of supervisors, nor of any of their authorized agents.

Section 1, chapter 38, Laws 1912, makes provision for the recovery from a county of reasonable compensation for live stock killed or permanently injured as the result of dipping where such dipping was done under the supervision of the board of supervisors or of the live stock sanitary board."

Section 1, chapter 167, Laws 1916, provides that the State Live Stock Sanitary Board be and are hereby directed and required to appoint some suitable person in each county infected with cattle tick and where tick eradication has not heretofore been done in such manner as to destroy the cattle tick of such county, and who shall see that the tick eradication is carried on in accordance with the rules and regulations of the State Live Stock Sanitary Board. The person appointed by the State Live Stock Sanitary Board shall have, upon the recommendation of the board of supervisors, the power to select such assistants as may be necessary for the proper and successful conduct of such work of tick eradication, the selection of such assistants to be approved by the board of supervisors, and the salaries to be fixed by the board of supervisors of the county. Attention is also directed to section 3 of the same act.

Acting under the authority of this last chapter, Mr. Welsh was appointed inspector for Clarke county by the State Live Stock Sanitary Board, or its representative, and upon the recommendation of the board of supervisors, Mr. Evans was appointed assistant inspector and who is improperly denominated local inspector in the evidence (see the testimony of Mr. Welch). This inspector, Welch, and his assistant, Evans, fixed certain days for the dipping of cattle in Clarke County. Welch says that he never authorized his assistant to name any days for the dipping of cattle, other than the regular dipping days. On a day different from the one agreed upon by the inspector for the dipping of cattle, without informing the inspector or

his assistant of the day chosen, and in their absence Pippin took the law in his own hands and dipped the cow in question himself. Can it be said that this dipping was done under the supervision of the board of supervisors or the State Live Stock Sanitary Board. If not, the county is not liable under the provisions of the law just quoted; for by the express terms of the law the county is liably only when done under such supervision.

It is contended that Evans, the assistant inspector, authorized Pippin to dip his cattle on Monday, after he had failed to dip them on Saturday, the regular time for dipping cattle. Evans says that he did not. But even if he did the county would not be liable. If Pippin had notified Evans that he expected to dip the cow on Monday, designating the time of day, so Evans could be present and supervise the dipping, and more especially if Evans had been present, so that he could test the solution and see that it was not too strong, and so that he could supervise the dipping and later be a witness to any alleged claim of injury to the cow in consequence of the dipping, then it might be contended with some show of reason that the county would be liable. But surely an assistant inspector cannot designate authority to an individual to dip his cattle in his absence and then bind the county by such illegal act. The assistant inspector has no such authority, even if he had attempted to exercise it. His powers and duties are prescribed by law and by the rules and regulations of the State Live Stock Sanitary Board, and he cannot transcend them. His duty was to be present and supervise the dipping of cattle at the time fixed and published. He has no authority to tell the public at large, or any individual to dip their cattle at such time as suits their convenience and in his absence. It would be a dangerous power to confer on him. He need never be present—if he had such power, to see that the solution is properly prepared, that it was not too strong or too weak, nor supervise the dipping of the cattle, nor be present to witness it, and thereby be a witness for the

county in the event any false claim for damages might be presented for allowance. Any person without any information of how the liquid should be prepared, and with no ability nor instrument to determine whether it was too strong at the time of the dipping could be vested with authority to dip his cattle and hold the county liable for any damage done them, real or imaginary. It is a well known fact that because of evaporation, the liquid often becomes too strong, making it dangerous to dip cattle in it without adding more water. Instruments to test the strength of the liquid and see that it is not too strong are furnished the inspectors, in order that cattle may be safely dipped. The public have not these instruments and without them it would be hazardous to entrust them with the dipping of their cattle. For an inspector to neglect his duties and turn over to an ignorant and irresponsible public the dipping of their cattle and to hold the county responsible for the damage done them, would be to confer on them the power to bankrupt the county.

In the case of *Sutton & Dudley* v. *Board of Police,* 41 Miss. 236, it is held that the board of police, now board of supervisors, are in certain respects municipal corporaations, and that their duties are defined by statute and are not, like private corporations responsible for the tortious acts of their agents, and especially where these agents have been appointed in obedience to statutory regulations, and where their duties are prescribed by law. In that case the county board of police was held not liable for injuries to horses by falling through a bridge which was not kept in repair. It is only where express liability is fixed by statute that a county can be held liable for injuries to stock caused by its officials, and when such liability is provided for, the party claiming the damage must bring himself within the express terms of the statute.

ETHRIDGE, J., delivered the opinion of the court.

The appellant brought a suit in the justice of the peace court against Clarke county for the value of a cow al-

leged to have been killed .from drinking the fluid in a dipping vat during the process of dipping. There was a judgment for the plaintiff in the justice of the peace court from which an appeal was prosecuted to the circuit court. On the trial in the circuit court it appeared that Clarke county was conducting the work of tick eradication at the time of the alleged injury, having a county inspector who appointed certain deputy or assistant inspectors. The rules provided for dipping at the particular vat where the injury is said to have occurred on certain Saturdays, being two weeks from one dipping day until another. On one of the Saturdays a deputy inspector attended the vat where the injury occurred and supervised the dipping of the cattle in the community on that day. Mr. Pippin's cattle were not brought to the dipping vat on that day for dipping, and when the dipping was concluded by the inspector he went to the house of Mr. Pippin to inquire the reason for his failure to dip his cattle. Mr. Pippin was not at home, but his son told the inspector that the reason they did not dip was that the cattle had been turned out on the range to graze and could not be located. The inspector then informed young Pippin that his father had better dip his cattle, and, according to the young man, directed them to do so on Monday, and on the following Monday the cow in question was carried to the dipping vat and dipped by Mr. Pippin with the aid of some helpers, the dipping inspector not being present at the time.

When the cow was started into the dipping vat one of her feet got caught in something, causing her to plunge into the dipping vat headforemost. She came out of the vat apparently limping and was carried some distance from the dipping vat by the son of the plaintiff and left on the range. On Monday afternoon the cow failed to come home, and a search was instituted, and she was found dead. She was cut open, and in her stomach was found two or three cupfuls of a dark fluid resembling the fluid in the vat, but no test was made of the fluid to de-

termine whether or not it was the fluid of the dipping vat.

The board of supervisors refused to pay the claim for the cow and suit was brought as above stated. At the conclusion of the evidence on motion of the county the court granted a peremptory instruction for the county, upon which a verdict was rendered and judgment entered denying the claim, from which judgment this appeal is prosecuted.

The action is brought under chapter 38 of the Laws of Extra Session of Mississippi of 1917, which provides that any person in any county shall be entitled to recover from such county reasonable compensation for any live stock owned by such person that may have been killed or permanently injured as a result of dipping for the eradication of cattle ticks "where such dipping was done under the supervision of the board of supervisors or the Live Stock Sanitary Board."

Was the dipping in the present case done under the supervision of the board of supervisors or the Live Stock Sanitary Board within the meaning of this provision? The inspector of the county was not present at the dipping, and had nothing to do with it except to direct that the owner who had failed to dip at the time required by the rules should dip his cattle on the following Monday.

We do not think the case comes within the statute. The liability is imposed where the dipping is done under the supervision of the agent of the county or the Live Stock Sanitary Board. In the present case the dipping was done by the owner, and the owner did what supervising was done in the present case. The intention of the statute, taking it as a whole, is to compensate the owner for an injury resulting from the negligence of the county or the Live Stock Sanitary Board free from contributory negligence on the part of the owner. It did not intend to compensate the owners for losses resulting from their own negligence. If there was any negligence in the present case, it was the negligence of the owner. There is no pretense in the record that the fluid was not properly pre-

pared, and no agent of the county or of the Live Stock Sanitary Board was present at the dipping. It is doubtful whether the evidence would show with sufficient certainty that the death resulted from drinking the fluid, but we do not base our decision upon this question, but base it upon the proposition that the owner has not brought himself within the terms of the statute.

The judgment will accordingly be affirmed.

*Affirmed.*